```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION

VISNJA TABAKOVIC,                     )
                                      )
          Plaintiff,                  )
                                      )
     v.                               )     No. 4:12 CV 1122 DDN
                                      )
CAROLYN W. COLVIN,[1]                 )
Acting Commissioner of Social         )
Security,                             )
                                      )
          Defendant.                  )
```

**MEMORANDUM**

This action is before the court for judicial review of the final decision of defendant Commissioner of Social Security denying the application of plaintiff Visnja Tabakovic for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1382. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the court affirms the decision of the Administrative Law Judge (ALJ).

**I. BACKGROUND**

Plaintiff, who was born in 1963, filed her SSI application on September 24, 2009. She alleged a March 31, 2004 onset date, due to chronic neck, shoulder, and back pain; throat cancer; and eye and dental problems. (Tr. 50-51, 150.) Her claims were denied initially, and after a hearing before an ALJ. (Tr. 56-60, 9-15.) On April 16, 2012, the Appeals Council denied her request for review. (Tr. 1-3.) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. The court hereby substitutes Carolyn W. Colvin as defendant in her official capacity. F.R.Civ.P. 25(d).

## II. MEDICAL HISTORY

On April 1, 2008, plaintiff saw Yusuf Chaudhry, M.D., for joint pain and stiffness in the small joints of her hand, and for fatigue, particularly at the end of the day. Dr. Chaudhry diagnosed rheumatoid arthritis and an acute upper respiratory infection. (Tr. 191.)

Plaintiff was admitted to Jefferson Memorial Hospital under Dr. Chaudhry April 14-15, 2008, for dizziness and headache, neck pain, nausea and vomiting. She was a pack-per-day smoker. Plaintiff saw James D. Gould, M.D., an otolaryngologist, for a consultation. His impression was vertigo consistent with migraine, tinnitus (ringing in the ear), otalgia (earache or ear pain), and an enlarged adenoid nasopharyngeal carcinoma. Her diagnoses at discharge were dizziness, migraine headache, osteoarthritis, tobacco use, and nausea with vomiting. (Tr. 183-84, 274-79, 466-67.)

On April 22, 2008, plaintiff saw Dr. Gould for follow-up for her enlarged adenoid. He opined that nasopharyngeal carcinoma could not be excluded and ordered an audiogram and adenoidectomy to rule out malignancy. (Tr. 185-86.)

On May 1, 2008, plaintiff saw Dr. Chaudhry again with complaints of chronic tension and migraine headaches. Dr. Chaudhry diagnosed hypertrophy of the adenoids and headache and prescribed Esgic Plus, used to treat tension headaches. (Tr. 193.)

On May 21, 2008, plaintiff saw John F. Eisenbeis, M.D., at the St. Louis University Department of Otolaryngology for the mass in her nasopharynx. Dr. Eisenbeis found mild septal deviation, changes in the mucosa of the nose from smoking, and adenoid enlargement causing 80-90% obstruction of the choana, or opening at the back of the nasal passage. (Tr. 230.)

On June 3, 2008, plaintiff underwent an adenoidectomy or removal of the adenoids under Dr. Eisenbeis at St. John's Mercy Hospital. The surgery was complicated by a moderate amount of bleeding and she remained hospitalized for one night of observation. (Tr. 213-16.)

On June 6, 2008, plaintiff was seen in the emergency room (ER) at Jefferson Memorial Hospital under Dr. Chaudhry with complaints of weakness, dizziness, and inability to swallow. She was admitted and

discharged the following day. Dr. Chaudhry's impression of plaintiff's condition was blood loss anemia, dizziness, and dysphagia or difficulty in swallowing. (Tr. 238-68, 471-76.)

On June 10, 2008, plaintiff saw Dr. Chaudhry with complaints of anxiety over the past few weeks, that she was not feeling well, weakness, and dry mouth. Dr. Chaudhry diagnosed dehydration and anxiety. He ordered blood work, Gatorade, and prescribed Ativan, for anxiety. (Tr. 195-199, 201.)

On June 11, 2008, plaintiff saw Dr. Eisenbeis for follow-up on her adenoidectomy. She had stopped taking her prescription pain medicine and was now taking only Advil. She was having difficulty swallowing with a feeling of gagging and vomiting, and there was some nasal drainage into the pharynx. She was experiencing weakness, pain on her right side when laying down, and looser stools while on the medicine. Dr. Eisenbeis noted that "for the most part" she was "doing fine." (Tr. 224-25.)

During a July 16, 2008 follow-up visit to Dr. Eisenbeis, plaintiff reported that her nose occasionally felt a little dry, but for the most part she was doing fine. Dr. Eisenbeis noted that she was "doing beautifully" following surgery. (Tr. 221-22.)

More than one year later, on October 16, 2009, plaintiff saw Dr. Chaudhry for a check up and with complaints of myalgias or body aches. Dr. Chaudhry's assessments were arthritis and fibromyalgia. He referred her to Hamid Bashir, M.D. a rheumatologist. (Tr. 304.)

Plaintiff saw Dr. Bashir on November 9, 2009. He diagnosed osteoarthritis and fibromyalgia. Plaintiff's lab results were consistent with fibromyalgia, negative for inflammatory arthritis, and showed a Vitamin D deficiency. (Tr. 296-98.)

On November 10, 2009, plaintiff saw Dr. Eisenbeis for follow-up on her adenoidectomy. He was very pleased with the results. She also had obvious clicking in the temporomandibular joint (TMJ). Dr. Eisenbeis instructed her to see a dentist and referred her to an oral surgeon. (Tr. 333.)

On November 20, 2009, plaintiff saw Dr. Chaudhry for a check-up. He diagnosed dehydration, anxiety, osteopenia, fibromyalgia, and TMJ disorder. Dr. Chaudhry prescribed Ativan, for anxiety; Fosamax Plus D,

for osteopenia; Motrin, for fibromyalgia; and Darvocet, an analgesic used to treat mild pain.  (Tr. 306-07.)

Plaintiff saw Dr. Chaudhry on December 29, 2009 for an exam and to complete SSI paperwork.  Although plaintiff complained of shoulder pain of several weeks' duration, Dr. Chaudhry reported no signs of shoulder pain such as limited range of motion (ROM), swelling, or warmth.  His primary diagnoses included dehydration and TMJ disorder.  His other diagnoses were arthritis of the shoulder, anxiety, fibromyalgia, and osteopenia or low bone density.  Dr. Chaudhry prescribed Naprosyn, for dehydration; Celebrex, for arthritis; Ativan; Motrin; Fosamax Plus D; Augmentin, for TMJ Disorder; and Darvocet.  (Tr. 482-83.)

Dr. Chaudhry completed a Physical Medical Source Statement (MSS), listing diagnoses of fibromyalgia, arthritis, TMJ disorder, and osteopenia.  He opined that plaintiff could sit for 15-30 minutes, stand 60-90 minutes, and walk 60-90 minutes at one time without a break; could sit 90 minutes or less, stand about 2 hours, and walk 90 minutes or less in an eight-hour workday.  She could lift or carry 2 to 5 pounds occasionally; stoop and reach over her head occasionally, and rarely crouch, crawl, or climb ladders or scaffolds.  She could rarely tolerate exposure to temperature or humidity extremes, and occasionally tolerate exposure to odors or dust.  She had significant manipulative limitations in both hands in gross handling of large objects, fine fingering of small objects, and reduced grip strength or pain in gripping.  Dr. Chaudhry opined that plaintiff had jaw, neck, and shoulder pain with muscle pain all day on a daily basis.  He believed that plaintiff would need to lie down or take a nap for 3 hours during an eight-hour workday and would need to take breaks every 90 minutes due to neck pain.  (Tr. 310-13.)

On May 17, 2010, plaintiff saw Dr. Chaudhry for a cough and chest congestion.  He diagnosed asthmatic bronchitis and cough and started her on Augmentin, a penicillin antibiotic, and Robitussin.  (Tr. 484.)

On August 3, 2010, plaintiff saw Dr. Chaudhry for right ear pain with a popping sensation, chronic nasal congestion, taste of blood in the mouth, nocturnal heartburn, and drowsiness.  Dr. Chaudhry diagnosed impacted cerumen or ear wax, acute upper respiratory infection, and GERD. He started her on Augmentin; Mucinex, to loosen mucus; Debrox solution,

for ear wax removal; and Zantac, an acid reducer used to treat GERD. (Tr. at 486-87.)

On September 14, 2010, plaintiff saw Dr. Eisenbeis, with complaints of generalized malaise. Dr. Eisenbeis thought her symptoms could be caused by allergies. He started her on an antihistamine and ordered a complete blood count. (Tr. 332.)

On March 4, 2011, plaintiff saw Dr. Chaudhry for a toothache and gingival disease and prescribed Tylenol with codeine and penicillin. (Tr. 335.)

**Testimony at the Hearing**

On April 7, 2011, plaintiff appeared and testified to the following at a hearing before an ALJ. (Tr. 20-48.) She lives with her husband and three children, ages, 11, 14, and 15. She became a U.S. citizen in 2004 or 2005. She earned a doctorate in veterinary science when she lived in Bosnia. She is unable to work because she has residual pain from her adenoidectomy, as well as arthritis. She cannot sit for long periods of time and her legs hurt when she walks. She has pain in her spine and leg. She cannot pick up more than four or five pounds. She is licensed to drive in Texas but does not own a car. (Tr. 20-33, 42.)

She can stand for only 20 minutes before she feels drowsy and dizzy and needs to sit. She can sit for 30 or 40 minutes before she needs to get up. Her left side and shoulder hurt when she uses her left hand. (Tr. 34-36.)

She gets up in the morning at about 6:00 or 6:30 a.m. and makes her children a snack before their school bus arrives at 6:45 a.m. She comes inside and lays down, rests, and watches TV. The extent of her food preparation is heating food in the microwave. Her children do the grocery shopping and pick up after themselves around the house. She is unable to vacuum or fold laundry. She can bathe herself, but keeps the bathroom door open in case she falls. (Tr. 36-42.)

A vocational expert (VE) also testified to the following at the administrative hearing. She has no past relevant work (PRW). Under the first hypothetical, the individual could lift 20 pounds occasionally and 10 pounds frequently. She could sit and stand for six hours in an eight-

hour workday and could occasionally lift overhead with her left upper extremity. The VE testified that under that hypothetical there were light unskilled jobs that an individual of plaintiff's age and education could perform. (Tr. 45.)

The second hypothetical was the same as the first except that the individual would be unable to sustain an eight-hour work day. The VE testified that there were no jobs that would be available under that hypothetical. (Tr. 45.)

Under a third hypothetical asked by plaintiff's attorney, the hypothetical individual was able to sit for 90 minutes or less; stand about two hours; walk 90 minutes or less in an eight-hour workday; lift 2 to 5 pounds; occasionally stoop and reach above her head; rarely crouch, crawl, or climb ladders or scaffolds; rarely tolerate exposure to temperature or humidity extremes and withstand only occasional exposure to odors and dust. The hypothetical individual would have significant manipulative limitations in gross handling, fine fingering, and reduced grip strength and would need to take a break every 90 minutes due to pain. The VE testified that there were no jobs that would be available under that hypothetical. (Tr. 45.)

### III.   DECISION OF THE ALJ

On May 17, 2011, the ALJ issued a decision that plaintiff was not disabled. (Tr. 9-17.) At Step One, the ALJ determined that plaintiff had not engaged in substantial gainful activity since her September 24, 2009 application date. (Tr. 10.) At Step Two, the ALJ found that plaintiff had the severe impairments of fibromyalgia and degenerative disc disease of the cervical spine. (Id.) At Step Three, the ALJ found that plaintiff did not suffer from an impairment or combination of impairments of a severity that met or medically equaled the required severity of a listed impairment. (Tr. 12.)

Prior to Step Four, the ALJ determined that plaintiff had the residual functional capacity (RFC) to perform "light" work with the following restrictions: she could lift 20 pounds occasionally and 10 pounds frequently; sit or stand for 6 hours each in an 8-hour workday; and perform only occasional reaching overhead with her left arm. (Tr.

12.)  At Step Four, the ALJ found that plaintiff had no PRW.  (Tr. 14.) The ALJ found that plaintiff's impairments would not preclude her from performing work that exists in significant numbers in the national economy, including work as a cafeteria counter attendant, ticket taker, and cashier.  (Tr. 15.)  Consequently, the ALJ found that plaintiff was not disabled under the Act.  (Id.)

### IV.  GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and is supported by substantial evidence in the record as a whole.  <u>Pate-Fires v. Astrue</u>, 564 F.3d 935, 942 (8th Cir. 2009).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  <u>Id.</u>  In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision.  <u>Id.</u>  As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. <u>See</u> <u>Krogmeier v. Barnhart</u>, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months.   42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A); <u>Pate-Fires</u>, 564 F.3d 935, 942 (8th Cir. 2009).  A five-step regulatory framework is used to determine whether an individual qualifies for disability.  20 C.F.R. § 404.1520(a)(4); <u>see</u> <u>also</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987) (describing the five-step process); <u>Pate-Fires</u>, 564 F.3d at 942 (same).

Steps One through Three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment.   <u>Pate-Fires</u>, 564 F.3d at 942.   If the claimant does not

suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Id. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform her PRW. Id. The claimant bears the burden of demonstrating she is no longer able to return to her PRW. Id. If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work. Id.

## V. DISCUSSION

Plaintiff argues the ALJ erred: (1) in failing to evaluate her credibility; (2) in failing to refer her for a psychological consultative evaluation; and (3) in failing to give less than controlling weight to the opinion of her treating physician, Dr. Chaudhry. The court disagrees.

### 1.   Credibility

Plaintiff argues that the ALJ erred in failing to evaluate her credibility. In his decision, the ALJ noted that the plaintiff alleged disability due to a number of limitations including dizziness, swelling and numbness of her legs, and neck pain, as well as an inability to sit for more than 30 to 40 minutes at a time, lift more than 5 pounds, or reach overhead. (Tr. 12.) The ALJ then noted that "the medical record contains a considerable number of findings upon clinical examination inconsistent with a claim of inability to perform any sustained work activity." (Tr. 13.) While the ALJ did not specifically use the term "credibility," a full reading of his decision shows that he found that plaintiff's complaints were not fully credible based on the factors set forth in his decision and discussed below. (Tr. 13-14.)

For example, despite plaintiff's allegations of chronic dizziness, in May 2008 plaintiff told her physicians that her dizziness was "dramatically improved" on medication. (Tr. 13, 227.) Plaintiff underwent adenoid surgery in June 2008 and was "doing beautifully" by the following month. (Tr. 13, 221.) In November 2009, plaintiff told Dr. Eisenbeis that her dizziness was resolved following her June 2008

surgery, over one year before she applied for SSI benefits. (Tr. 13, 333.) See Pepper ex rel. Gardner v. Barnhart, 342 F.3d 853, 855 (8th Cir. 2003) (impairments that are controllable or amenable to treatment do not support a finding of total disability). Moreover, a claimant's response to treatment is a factor in evaluating credibility. See 20 C.F.R. § 416.929(c)(3)(v). The ALJ properly considered these credibility factors in reaching his decision. (Tr. 13.)

   The ALJ also noted that despite complaints of disabling pain, plaintiff received only conservative treatment. (Tr. 13.) Although plaintiff complained of severe neck and leg pain, the record evidence demonstrates only minimal conservative treatment consisting of one or two physical therapy appointments and a course of cervical traction. (Tr. 26-27, 344, 348.) At the time of her application, plaintiff was taking only naproxen, an over-the-counter pain reliever. (Tr. 154.) See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (pattern of conservative medical treatment is a proper factor for ALJ to consider in evaluating credibility). See also Rankin v. Apfel, 195 F.3d 427, 429 (8th Cir. 1999)(claimant's decision not to attend physical therapy more often, as well as the results of the physical therapy administered, undercut allegations of disabling pain).

   The ALJ also noted that the record evidence was inconsistent with plaintiff's allegations of disabling neck pain and difficulty reaching. (Tr. 13.) Throughout the relevant period plaintiff had normal ROM in her spine and upper extremities. (Tr. 13, 191, 193, 195, 304, 306, 335.) In December 2009, although plaintiff complained of shoulder pain of several weeks duration, Dr. Chaudhry reported no signs of shoulder pain such as limited ROM, swelling, or warmth. (Tr. 482-83.) Nor was there any mention of shoulder pain in his subsequent treatment note dated May 2010, five months later. (Tr. 484.) While x-rays and MRIs of plaintiff's cervical spine revealed some degenerative disc disease, which the ALJ acknowledged as a severe impairment, there was no evidence of radiculopathy or inflammation of the nerves. (Tr. 12, 357, 389.) See Forte v. Barnhart, 377 F.3d 892, 895 (8th Cir. 2004)(ALJ may not discount allegations of disabling pain solely on the lack of objective medical evidence, but a lack of objective medical evidence is a factor an ALJ may

consider in determining a claimant's credibility).  Here, in support of his RFC determination, the ALJ noted the lack of supporting record evidence, plaintiff's history of minimal conservative treatment, and her statements that her impairments improved with treatment.  In doing so, the ALJ implicitly found that plaintiff's subjective complaints were not entirely credible to the degree that they exceeded the limitations in his RFC determination.  See Mapes v. Chater, 82 F.3d 259 (8th Cir. 1996) (implicit determinations of credibility are adequate when ALJ's conclusion is supported by substantial evidence). Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996) (ALJ did not specifically outline reasons for rejecting testimony, but clear from record that ALJ made certain implicit determinations regarding credibility).

The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the court.  See Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001).  If the ALJ discounts a claimant's credibility and gives good reasons for doing so, the court will defer to the ALJ's judgment even if every relevant factor is not discussed in depth.  See Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996).  Because the ALJ here articulated the inconsistencies on which he relied in discrediting plaintiff's testimony regarding her subjective complaints, and because the credibility finding is supported by substantial evidence on the record as a whole, the ALJ's credibility finding is affirmed.  See Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996).

### 2. Consultative Exam

Plaintiff next argues that the ALJ erred in failing to refer her for a consultative psychological examination.  In support, she cites a 2004 ER visit for a panic attack, physician statements dated July 22, 2005, and May 31, 2006, indicating disabling "psychosis" and generalized anxiety disorder (GAD), anxiety diagnoses under Dr. Chaudhry in 2008 and 2009, and her prescription for Ativan, used to treat anxiety.

Plaintiff cites evidence from 2004 through 2006.  However, plaintiff did not apply for SSI benefits until September 24, 2009.  For purposes of eligibility for SSI, the issue is whether plaintiff was disabled as of the date of her application, not her alleged onset date.  See 42

U.S.C. § 1382(c); 20 C.F.R. §§ 416.330 and 416.335. Therefore, plaintiff's condition during the years before she applied for benefits is of very limited relevance. Moreover, the record evidence from this period does not show consistent psychiatric treatment, and in fact, does not show that plaintiff ever sought treatment from a mental health professional. See Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000)(absence of any evidence of ongoing counseling or psychiatric treatment or of deterioration or change in claimant's mental capabilities disfavors a finding of disability). The mere fact that a claimant has been prescribed anti-anxiety medication on at least one occasion is not enough to require the ALJ to inquire further into the condition by ordering a psychological evaluation. Cf. Hensley v. Barnhart, 352 F.3d 353, 357 (8th Cir. 2003)(anti-depression medication).

Further, neither plaintiff nor counsel addressed her anxiety at the administrative hearing. Nor did plaintiff allege anxiety as a disabling impairment at the time of her application. (Tr. 150.) See Mouser v. Astrue, 545 F.3d 634, 639 (8th Cir. 2008)(ALJ is not obliged to investigate claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability); 20 C.F.R. § 416.912(a) (2012) ("We will consider impairment(s) you say you have or about which we receive evidence").

Finally, the record evidence does not reveal ongoing severe anxiety. Dr. Chaudhry consistently noted that plaintiff reported no anxiety or depression. (Tr. 191-94, 304-07, 335-36, 484-87.) On June 10, 2008, plaintiff saw Dr. Chaudhry with complaints of anxiety and was prescribed Ativan. (Tr. 195.) Plaintiff did not see Dr. Chaudhry again until a followup visit on November 20, 2009, over one year later, and no specific complaint of anxiety was noted. (Tr. 13, 306-07.) On December 29, 2009, when plaintiff saw Dr. Chaudhry to complete disability paperwork, Dr. Chaudhry diagnosed anxiety, but did not document any complaints of anxiety in his records. (Tr. 482.) There was no further reference to anxiety in his subsequent notes from 2010 and 2011. (Tr. 335, 484, 486.) Based on all of the above, the ALJ was not required to order a consultative psychiatric examination.

### 3. Opinion of Treating Physician, Dr. Chaudhry

Plaintiff finally argues that the ALJ erred in giving less than controlling weight to Dr. Chaudhry's December 29, 2009 Medical Source Statement (MSS). (Tr. 310-13.) On his MSS, Dr. Chaudhry listed diagnoses of fibromyalgia, arthritis, TMJ disorder, and osteopenia. He opined that plaintiff could sit for 15 to 30 minutes and stand and walk for 60 to 90 minutes at a time. He estimated that over the course of an eight-hour workday, plaintiff could only sit for 90 minutes, stand for 2 hours, and walk for 90 minutes. Dr. Chaudhry indicated that plaintiff could occasionally lift and carry 2 to 5 pounds; never lift or carry 10 pounds; occasionally stop and reach above her head; and never crouch, crawl, or climb ladders or scaffolds. He opined that plaintiff needed to lie down for 3 hours during an eight-hour workday and needed to take breaks every 90 minutes due to neck pain. (Tr. 310-13.)

An ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See Brace v. Astrue, 578 F.3d 882, 885 (8th Cir. 2009)(citing 20 C.F.R. § 416.927(c)(2)). If the opinion fails to meet these criteria; however, the ALJ need not accept it. Brace, 578 F.3d at 885.

Here, while the ALJ acknowledged that Dr. Chaudhry was a treating source, he determined that there were reasons his opinion could not be afforded substantial weight. The ALJ noted that there was insufficient evidence in Dr. Chaudhry's treatment notes to support the limitations described on his MSS. Despite indicating that plaintiff could never lift more than two to five pounds, Dr. Chaudhry never documented any motor strength deficits. Dr. Chaudry also opined that plaintiff had significant postural limitations, yet his examinations uniformly revealed intact ROM of her cervical and lumbar spine. (Tr. 13, 191, 193, 195, 304, 306-07, 311, 335, 482, 484.)

The ALJ properly determined that Dr. Chaudhry's opinion was not entitled to significant weight because it was inconsistent with and unsupported by the record evidence, including Dr. Chaudhry's own treatment notes. See Halverson v. Astrue, 600 F.3d 922, 930 (8th Cir.

2010)(where the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight). The ALJ also noted that plaintiff's treatment history with Dr. Chaudhry detracted from the weight afforded to his opinion. As noted above, during 2008 and 2009, plaintiff went over one year between visits to Dr. Chaudhry. Despite allegedly disabling symptoms, plaintiff went from August 2010 to March 2011 between doctor visits. (Tr. 335, 486.) An ALJ can consider the frequency of treatment as a factor in evaluating medical opinions. See 20 C.F.R. § 416.927(c)(2)(I).

There was also record evidence that Dr. Chaudhry relied on plaintiff's own estimates of her ability to perform work activity. Plaintiff testified that when Dr. Chaudhry filled out the MSS, he simply asked her the questions on the form and that she in turn answered. (Tr. 46-47.) See Woolf v. Shalala, 3 F.3d 1210, 1214 (8th Cir. 1993)(ALJ is justified in discrediting the opinion of treating physician when based solely on claimant's subjective complaints and not supported by other findings); Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007) (ALJ is entitled to give less weight to treating physician's opinion because it was based largely on claimant's subjective complaints rather than on objective medical evidence).

Plaintiff further contends that Dr. Chaudhry's opinion is supported by that of Dr. Bashir who examined her on November 9, 2009 for diffuse joint and soft tissue pain. However, Dr. Bashir found that plaintiff had full ROM and no synovitis or inflammation in any joints, and her lab results were negative for inflammatory arthritis. Dr. Bashir's only positive finding was that plaintiff's subjective reports of tenderness were consistent with fibromyalgia. But rather than indicating that plaintiff was disabled, Dr. Bashir instructed her to start an exercise and stretching program. (Tr. 296-302.) The ALJ also noted that plaintiff told Dr. Bashir that her stiffness improved upon waking and becoming active. (Tr. 13, 296). There is no evidence that plaintiff ever followed up with Dr. Bashir. Finally, in the months following plaintiff's appointment with Dr. Bashir, Dr. Chaudhry was no longer diagnosing fibromyalgia or describing any fibromyalgia-related complaints. (Tr. 335, 484-87.) In fact, plaintiff repeatedly denied any

myalgias. (Tr. 335, 484.) The minimal findings contained in Dr. Bashir's report do not support the limitations set forth by Dr. Chaudhry. (Tr. 296-302.)

Based on all of the above, the ALJ properly considered all of the medical opinion evidence in the record.

## VI. CONCLUSION

For the reasons set forth above, the court finds that the decision of the ALJ is supported by substantial evidence in the record as a whole and is consistent with the applicable law. The decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.

/S/ David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on September 16, 2013.